UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MATTHEW L. SINGLETARY, | ) | C/A No. 4:11-00512-RMG-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| ANTHONY J. PADULA, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Matthew L. Singletary (Petitioner/Singletary), is currently incarcerated at Lee Correctional Institution. Petitioner appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on March 8, 2011. Respondent filed a motion for summary judgment on December 19, 2011, along with a return, supporting memorandum and exhibits. (Docs. #26 and #27). The undersigned issued an order filed December 21, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #28). Petitioner filed a response on March 23, 2012.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## **PROCEDURAL HISTORY**

The procedural history as set out by the Respondent has not been disputed by the Petitioner. In fact, in the response to the motion for summary judgment, Petitioner stated that he "Agrees with the facts as recited by Respondents." (Doc. #39). Therefore, the undisputed procedural history as stated by the Respondent is set forth herein, quoted, in part verbatim.

Petitioner Matthew L. Singletary ("Petitioner") was indicted by the Florence County Grand Jury during the June 2003 term of court for murder, kidnapping, and conspiracy related to his role in the beating death of an acquaintance, James Miller, Jr. (App. 877-78). Beginning on January 31, 2005, Petitioner and his co-defendant Christopher Lane underwent a jury trial before the Honorable James E. Brogdon, Jr. and a jury in Florence. (App. 1). At trial, Petitioner was represented by Richard W. Strobel, while his co-defendant was represented by Paul V. Cannarella. (App. 1). The State was represented by Solicitor Edgar L. Clements, III. (App. 1). At the conclusion of his trial, Petitioner was found guilty as charged and sentenced to sixty (60) years for murder, thirty (30) years for kidnapping, and five (5) years for conspiracy, with all sentences to run concurrently. (App. 756-57, 766).

A timely Notice of Appeal was filed and an appeal perfected on Petitioner's behalf. See Notice of Appeal in #2003-GS-21-0715. On appeal, Petitioner, represented by Robert M. Dudek of the South Carolina Commission on Indigent Defense, submitted a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), arguing "the court erred by allowing the solicitor to read portions of state witness Anthony Driggers" statement to the police that implied Driggers knew a motive for appellant to kill the decedent, and also insinuated that appellant planned to kill the co-defendant Lane since his statement was not in evidence, and it was highly improper and prejudicial for the solicitor to read from it during his closing argument[.]" (App. 840-53). Pursuant to the <u>Anders</u> procedure, Petitioner filed a *pro se* brief. On June

2

28, 2007, Petitioner's appeal was dismissed by the South Carolina Court of Appeals. See State v. Singletary, Op. No. 2007-UP-335 (Ct. App. 2007) (App. 875). The case was remitted to the trial court on July 16, 2007. (App. 876).

On January 18, 2008, Petitioner filed a *pro se* application seeking post-conviction relief ("PCR") alleging ineffective assistance of counsel. (App. 768-76). The State, represented by Assistant Attorney General Julie Thames, filed its return on September 23, 2008 requesting an evidentiary hearing. (App. 781-84). Subsequently, on December 4, 2008, Petitioner, then represented by Charles T. Brooks, III, filed an amended application for PCR.

On December 16, 2008, an evidentiary hearing was conducted before the Honorable Benjamin H. Culbertson in Florence. (App. 785). At the hearing, both Petitioner and his former attorney, Richard Strobel testified. (App. 786). At the conclusion of the hearing the PCR court issued an oral ruling denying relief. (App. 822-25). Thereafter, on January 9, 2009, the PCR court issued a written order denying Petitioner's PCR. (App. 828-39). Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend.

Following a timely filed and served notice of appeal, Petitioner, represented by Lanelle Cantey Durant of the South Carolina Commission on Indigent Defense, filed a petition for writ of certiorari in the South Carolina Supreme Court arguing the PCR court erred in: (1) "failing to find trial counsel ineffective for not cross-examining Petitioner's co-defendant Christopher Lane in their joint trial[;]" and (2) "failing to find trial counsel ineffective for not objecting when Investigator Shelby Lary and Co-defendant Christopher Lane testified that a bat, flashlight and wooden chair arm were the ones used to assault the victim when no proof was presented these were the actual items used[.]" On November 9, 2009, the State filed its return to petition for writ of certiorari. Thereafter,

on September 23, 2010, the South Carolina Supreme Court denied certiorari. See Order Denying Certiorari in #2008-CP-21-0109. The remittitur was issued on October 12, 2010.

## HABEAS ALLEGATIONS

Petitioner filed his petition on March 8, 2011, raising the following allegations:

GROUND ONE: Petitioner was denied his Sixth Amendment right to the Effective Assistance of Counsel where his trial counsel failed to object to the admission into evidence of a bat, two flashlights and a wooden chair arm, and the characterization of these items as the weapons used in the alleged crime, when all evidence pointed to the fact that these items were not used in the alleged crime(s)[;]"

GROUND TWO: "Petitioner"s Sixth Amendment right to the effective Assistance of Counsel was abridged whereas trial counsel failed to cross-examine Petitioner"s co-defendant, Christopher Lane, during their joint trial." Trial counsel's failure to obtain expert witnesses and failing to research alleged victim's A.D.D. disorder in which was not diagnosed by a doctor.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## **PROCEDURAL BAR**

A. Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a petitioner has not first submitted his claims for relief to the state courts. Generally, pursuant to the exhaustion doctrine[2], a habeas petitioner will be procedurally barred from bringing a federal habeas

---

[2] As stated by the Supreme Court:
> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity

claim if the claim has not first been presented to the state's highest court with authority to decide the issue. See 28 U.S.C. §2254[3]; Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR).

---

to act . . .
Rose v. Lundy, 455 U.S. 509, 515 (1982).

[3] §2254(b) and (c) read as follows:
(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

>  (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>  (B)(I) there is either an absence of available State corrective process; or
>
>  (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See S.C. Code Ann. §17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983); Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)). See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

B. Cause and Actual Prejudice

In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

If a petitioner fails to show "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## ANALYSIS

Ground One

In Ground One, Petitioner argues that counsel was ineffective for failing to object to "the admission into evidence of a bat, two flashlights and a wooden chair arm, and the characterization of these items as the weapons used in the alleged crime, when all evidence pointed to the fact that these items were not used in the alleged crimes." [4] Petitioner argues that SLED's DNA analysis proved that the items were not used in the crime.

Respondent argues that trial counsel testified at the PCR hearing that Petitioner had told him that he did not use the bat, and he confirmed no blood was ever identified from the items. Respondent argues that trial counsel explained he did not object to the admission of the chair arm, flashlight, or baseball bat because there was no blood or DNA on the items linking them to the Petitioner or the victim. Further, Respondent asserts trial counsel used the admission of these items to Petitioner's advantage during cross-examination when counsel elicited testimony from the States' witness, Officer Cockfield, that the victim's blood was not on any of the items recovered which was an issue that could produce reasonable doubt as to the extent of Petitioner's involvement in the victim's death. Further, Respondent contends that even assuming trial counsel had elected to object to the admission of the items (bat, flashlight, and chair arm), the state court determined that such an objection would have been overruled in light of the testimony establishing their relevance. After

---

[4] Respondent asserts that only a portion of this claim was presented to the PCR court. Specifically, Respondent argues that the amended PCR application prepared by PCR counsel failed to present at PCR his claim that counsel was ineffective for failing to object to the "characterization of the weapons, instead only arguing counsel was ineffective for failing to object to their admission." It does not appear that the PCR court ruled on the "characterization" issue. Therefore, the issue is procedurally barred. To the extent the issue is inherently subsumed within the issue raised-admission into evidence of the items-it is without merit as discussed below.

9

interviewing Driggers, the law enforcement officials sought a search warrant for Petitioner's home believing he was in possession of the weapons used to kill the victim. Therefore, Respondent argues that any objection would not have kept the State from introducing the evidence at issue so that counsel's failure to object could not result in ineffective assistance of counsel.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass,

753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

The PCR set forth the following summary of testimony and evidence presented at the PCR evidentiary hearing:

> The Applicant testified at the PCR hearing. He testified that his father retained trial counsel and that he met with trial counsel four or five times. The Applicant testified that he told trial counsel about mental health issues he suffered from and that he signed a release form for his records. He testified that trial counsel read the records and stated that the reports would hurt the Applicant more than they would help him. The Applicant also testified that he should have been evaluated because he was the only one of the three codefendants that had a history of mental health issues.
>
> The Applicant testified that trial counsel was ineffective because after the motion for severance was granted, trial counsel opted to go forward with a joint trial instead of actually taking the severance and holding the Applicant's trial at another time. The Applicant testified that a conflict of interest existed between he and his co-defendant, Christopher Lane, because Lane testified and he did not. The Applicant testified that at trial Lane testified that the Applicant [w]as more culpable than he was. The Applicant testified that this was prejudicial to him because in reality, Lane was more guilty than he was.

11

The Applicant testified that trial counsel should have objected to the introduction of the bat, flashlight and chair arms at trial because no DNA was found on those items. He testified that nothing linked those items to the crime and trial counsel should have objected.

The Applicant testified that appellate counsel was ineffective because he did not meet with the Applicant and because he should have done a better job with the issues raised on appeal.

The Applicant testified that prior to the videotaped confession, he was stripped of his clothes, was denied food and water, and was put on suicide watch. He testified that he asked to speak with an attorney before the tape was twned on but that request was not honored.

The Applicant testified that the solicitor committed prosecutorial misconduct in that he vouched for the credibility of the third co-defendant who testified at trial against the Applicant and Lane. He testified that trial counsel should have requested a jury charge on voluntary intoxication as a mitigating factor. The Applicant testified that trial counsel should have objected to the solicitor's phrasing of a question wherein he stated that the victim had been beaten up by the Applicant and Lane. He lastly testified that trial counsel was not prepared for trial.

Trial counsel also testified at the PCR hearing. He testified that he met with the Applicant many times and discussed the case extensively. He testified that there were some plea negotiations in the beginning because law enforcement was primarily interested in getting the drug dealer that the Applicant knew. Trial counsel testified that law enforcement knew the drug dealer, known as Mr. B., supplied some drugs to the Applicant, and law enforcement wanted to use the Applicant to get to Mr. B. The Applicant was the only one of the co-defendants that communicated with Mr. B. Trial counsel testified that the Applicant stated he would only consider a deal if he would get probation and be allowed to enter the military. Trial counsel testified that the solicitor never made an offer because the Applicant would not cooperate with them. He testified that he it was rare to have a meeting with the solicitor and a defendant, but the Applicant refused to cooperate.

Trial counsel testified that he did not consider having the Applicant evaluated. He testified that he never had any problems communicating with the Applicant, that the Applicant was very involved with his case, and that the Applicant engaged in discussions with him. Trial counsel testified that he watched the videotaped confession and successfully kept it from the jury's consideration. The trial judge had found the tape was admissible and that the confession was voluntarily given. Trial counsel testified that he argued his motion to sever based on the confessions of the Applicant and Lane and that a conflict existed. The trial judge granted the motion to sever. However, after the motion was granted, the solicitor changed his strategy and

decided to proceed without the videotape confession. Trial counsel testified that he discussed this with the Applicant and the decision was made to proceed because they had a stronger case if the videotape was not played for the jury. He knew that if the cases were severed, the videotape would come in at the Applicant's trial because the trial judge had already ruled that it was admissible.

Trial counsel testified that he did not object to the introduction of certain items because they were not the murder weapons. He testified that the Applicant had stated to a Federal inmate that he threw the weapon used to beat the victim into the lake when he dumped the body. Trial counsel testified that an objection would not have been sustained when there was testimony about a bat, flashlights, and chair arms, and these items were found in the Applicant's house. Thus, they were relevant. Trial counsel testified that he was prepared for trial and that he took the case very personally because he knew the Applicant's family.

(App. 832-835).

With respect to the issue raised in Ground One that counsel was ineffective for failing to object to the bat, flashlight, and chair arm being introduced into evidence, the PCR court concluded as follows:

> This court finds no ineffective assistance of counsel for failing to object to certain items being admitted into evidence. The Applicant has not shown a likelihood of success if objections were made. The items were relevant as there was testimony about a bat, about flashlights, and about chair arms. These items were found in the Applicant's home. Whether or not they were proved to be the murder weapons is not dispositive of their relevance.

(App. 837).

At trial, there was testimony by officers that one of the co-defendants, Anthony Driggers, gave a statement that a bat, a piece of wood from a chair arm, and a flashlight were used in the beating of the victim. A search warrant was obtained for Petitioner's home at which a bat was recovered from a closet, a piece of wood was recovered from under a bed and two flashlights were recovered under some clothes and in another bedroom. (Tr. 270-276, 283, 285, 298-300303, 308, 313, 409-411). Also, at trial, Anthony Driggers testified that he and the other two co-defendants,

13

Petitioner and Christopher Lane, beat the victim with a piece of a chair arm, a bat, and a flashlight. (Tr. 438-485). Driggers testified that the exhibits he was shown during the trial appeared to be the bat and chair arm that was used to beat the victim. (Tr. 438). However, during the trial, trial counsel cross-examined the officer that took items from Petitioner's home and asked the officer "Was any blood from James Miller found on anything that you got from the home of Matthew Singletary?" The Officer checked his SLED report and testified "Nothing matching James Miller from the bat. Nothing from the Mag lights. And the jeans were never sent." (App. 294-295). Trial counsel asked the officer if there was anything on the two sticks and the officer testified there was nothing. Trial counsel then asked, "So you didn't find any blood there in his home at all from James Miller?" and the officer testified "Not from James Miller, no, sir." (App. 294). Therefore, trial counsel successfully solicited testimony that none of the items submitted into evidence that were taken from Petitioner's home had any blood from the victim on them.

The PCR court's dismissal order stated that "[t]rial counsel testified that he did not object to the introduction of certain items because they were not the murder weapons. He testified that the Applicant had stated to a Federal inmate that he threw the weapon used to beat the victim into the lake when he dumped the body. Trial counsel testified that an objection would not have been sustained when there was testimony about a bat, flashlights, and chair arms, and these items were found in the Applicant's house. Thus, they were relevant." (App. 835). The PCR judge found trial counsel's testimony to be more credible that Petitioner's. (App. 838). The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra.

Based on the above reasoning, it is recommend that Respondent's motion for summary judgment be granted with respect to Ground One of the habeas petition.

**Ground Two**

In Ground Two, Petitioner raised the following issue: "Trial counsel was ineffective for failing to cross examine Petitioner's co-defendant, Christopher Lane, during their joint trial." Petitioner argues that the state court misapplied Strickland in the analysis of his case.

Respondent argues by way of background that prior to trial, trial counsel sought to sever the trial between Petitioner and co-defendant Lane, arguing that severance was appropriate to ensure that he would be able to cross-examine Lane, who along with Petitioner had given a statement which the trial court ruled was admissible. The trial court granted the motion to sever. However, trial counsel testified that the Solicitor changed his strategy and agreed to withdraw Petitioner's confession if the case could be tried jointly. Therefore, the case was not severed. Trial Counsel agreed stating it was trial strategy to do it that way. (App. 814). Counsel also testified at the PCR hearing that he would not cross-examine Lane because that was his trial strategy. (App. 817).

The PCR court found the following with respect to this issue:

> This Court finds no ineffective assistance of trial counsel for failure to cross-examine Lane. The Applicant did not allege what trial counsel should have asked Lane, thus, no prejudice has been shown.
>
> . . . He successfully argued the motion to sever the trials and actually had an advantage in proceeding with the joint trial because the State elected not to use the videotaped confession given by the Applicant.

(App. 837-838).

Courts are instructed not to second guess an attorney's trial strategy and tactics. Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991). Counsel testified to his reasons for this strategy and the PCR court found him credible. (App. Courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, supra. Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Darden v.Wainwright, 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Also, the PCR court found Petitioner did not indicate what cross examination counsel should have conducted and, thus, failed to show any prejudice. The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground Two.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that Respondent's motion for summary judgment (doc. #26) be GRANTED, and that the Petitioner's Petition for Writ of Habeas Corpus be DENIED, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 12, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**